### PHILLIPS, Respondent, v. HUNTER, Appellant.

1. A. transferred to B. a negro slave, and gave a bill of sale absolute on its
face, but intended merely as a security for indebtedness of A. in favor of
B.; the slave, although delivered to B. at the date of the bill of sale, and
retained by him for a few days, was permitted to remain in possession of
A. until his death shortly after; A.'s administrator, upon the production by
B. of the absolute bill of sale, thinking B. justly entitled to the slave, re-
ceived from him a sum of money alleged to be the balance of the purchase
money due A.'s estate, and gave a receipt for the same and surrendered the
slave to B. *Held,* that this transaction did not amount to a sale of the slave
by the administrator to B., nor did it cut off the equity of redemption be-
longing to A.'s estate.
2. A sale by an administrator, under an order of the county court, of an
equity of redemption in a slave, is valid, although the slave is in the posses-
sion of the mortgagee, who claims to hold absolutely, and refuses to deliver
up the slave.

### *Appeal from New Madrid Circuit Court.*

This was a suit, instituted August 9th, 1853, to redeem a
slave, alleged by plaintiff to be held by defendant as mortga-
gee. The facts are as follows: One Winchester, owning a

negro boy named Frank, and being indebted to Hunter, the appellant, in the sum of $261, executed, January 28th, 1851, the following bill of sale : "For and in consideration of the sum of five hundred dollars to me in hand this day paid, the receipt whereof is hereby acknowledged, I have sold unto Wm. W. Hunter, and delivered up to him, a certain negro boy named Frank, aged about sixteen years, sound in body and mind, and a slave for life. The title of said boy I bind myself, my heirs, &c., to warrant and defend unto the said Hunter, his heirs, &c., against the claim or claims of all persons. In testimony whereof, I have hereunto set my hand this 28th day of January, 1851. [Signed] Isaac Winchester."

The following agreement, signed by the said Hunter and Winchester, was, at the same time, executed and delivered to Winchester : "I, having this day purchased of Isaac Winchester a certain negro boy, named Frank, for the sum of five hundred dollars, as stated in bill sale this day given me of said boy, do, by this writing, obligate myself, and agree with said Winchester, that if he does pay to me, on or before the twenty-fifth day of December next, the sum of two hundred and sixty-one dollars, with interest thereon from this date, and any other just demand I may have against him at that time, (viz., December 25, 1851,) that I will deliver up said boy to him (should he be alive) and make him a title to said boy Frank ; he, the said Isaac Winchester, agreeing that in case said negro boy Frank does not live until the 25th day of December, 1851, that he will pay the amount specified above, (two hundred and sixty-one dollars,) with interest thereon from this date until paid. In testimony whereof, we have set our hands, 28th January, 1851. [Signed] W. W. Hunter, Isaac Winchester."

At the time of the execution of these writings, Winchester delivered said negro Frank to Hunter, who retained possession of him for several days, and then permitted him to return to the possession of said Winchester. Winchester died in possession of said negro Frank. One Adam Magee was appointed administrator of the estate of said Winchester, and he, thinking at the

time that Hunter was justly entitled to the boy Frank, received from said Hunter, December 27th, 1851, the sum of $224 20, which was stated by Hunter to be the balance due Winchester on the price of the negro, and thereupon transferred said slave to Hunter, and gave him the following receipt : " Received of William W. Hunter two hundred and twenty-four dollars and twenty cents, being the full balance due Isaac Winchester, deceased, by said Hunter, on a negro boy, named Frank, sold to said Hunter by said Isaac Winchester, during his life-time, for the sum of five hundred dollars, and transferred by said Winchester on the 28th day of January, 1851, to said Hunter. New Madrid, Mo., December 28th, 1851. [Signed] Adam Magee, administrator of Isaac Winchester, deceased."

Afterwards, under an order of the county court of New Madrid county, Magee sold to the plaintiff, Presley Phillips, for the consideration of $277, all the interest of the estate of said Winchester in the negro boy Frank. This sale was made for the payment of the debts due from the estate of said Winchester. The boy Frank was not present at this sale to Phillips, but was in possession of defendant, Hunter.

The court found that the two instruments of writing, above set forth, dated January 28th, 1851, constituted a mortgage of the negro boy Frank to the defendant, Hunter.

Phillips, after tendering to Hunter, the defendant, the amount due him, after deducting the value of the services of the said negro Frank while in possession of the defendant, and upon the refusal of defendant to deliver up said negro to plaintiff, brought the present suit for his redemption.

The cause was tried by the court, and judgment was given for plaintiff. Defendant appealed.

*Glover & Richardson*, for appellant. 1. The sale by the administrator to the plaintiff was void. To constitute a sale, an actual or constructive delivery is necessary. There is no pretence that in this case there was an actual delivery to the respondent, neither was there a constructive delivery, for the slave, at the time of the sale by the administrator of the equity

of redemption, was in the adverse possession of the appellant. 2. The administrator had no interest in the slave at the time of his sale to the respondent, and therefore could pass no title. According to the finding of the court, Winchester had the right of redemption provided he paid to the appellant a certain sum of money by a given day; but having failed to pay it, the title to the slave vested absolutely in the mortgagee, and Winchester's right of redemption was forfeited. 3. On the 28th December, 1851, the administrator received of Hunter $224 20, the balance of the consideration for the purchase of the slave, and delivered him the slave as his property. The slave was a chattel, and if the administrator had the right to sell him, he had the right without an order of the county court, and his sale would carry all the interest of the estate in him. The transaction between the administrator and Hunter on the 28th December, 1851, operated as a sale; the money was paid and received as the balance due from Hunter for the purchase money and divested all the interest of the estate, so that nothing remained to be sold, and nothing was acquired by the respondent's purchase. The court does not find that there was any fraud in the payment of the money by Hunter or in getting possession of the slave, and the transaction, therefore, is to be treated as perfectly fair; and if the sale was within the scope of the powers of the administrator, it was effectual to pass the title. Whether the administrator acted wisely and sold for too little, is not the question, and the only question is one of power. 4. In this case, the administrator did not assign to the plaintiff a cause of action, but sought to sell a specific interest.

*T. Polk*, for respondent. 1. The motion for a review filed by appellant, defendant below, does not make a case containing any of the evidence; consequently there could be no review upon the evidence, either of questions of law or of fact, and the court below committed no error in overruling said motion. (Code of Practice, art. 16, § 3; Skinner v. Ellington, 15 Mo. 488; Raymond v. Edgar *et al.*, 19 Mo. 32.) 2. This court will not reverse the judgment of the court below for the reason

that the finding of the court below is not supported by the evidence. That is a matter left by this court to the lower court. And if that court refuses to set aside the verdict of a jury, or its own finding, on the ground of its not being warranted by the evidence, this court will not reverse its own judgment because of such refusal. (Skinner v. Ellington, 15 Mo. 488.) 3. The facts found by the court warrant the conclusions of law to which it came. And such being the case, this court will not reverse the judgment of the court below as this case is presented on the record. 4. Under the facts of this case, Winchester had a right to redeem the slave Frank. (Williams v. Rower, 7 Mo. 556.) It matters not that the time fixed for paying the debt for which the slave had been pledged by W. to appellant, had passed before the sale of the right of Winchester's estate in the same was made. Because, what the statute authorized to be sold, and what, in fact, was actually sold by the administrator, was the equity of redemption in the slave. And an equity of redemption in personalty as well as in reality, is the right of the mortgagor to redeem the estate or property when forfeited at law. (Jickling's Analogy.) 5. The county court of New Madrid county had authority to order the right of Winchester to redeem the slave, to be sold at public auction. (See Code 1845, art. 3, § 6 and 7, p. 83, 84.) 6. But the question whether respondent was clothed with all the rights to the slave that had belonged to Winchester in his life-time, was in no manner raised, as I contend, on the trial of the cause below, and this court ought not to entertain it. This court will pass only on the questions that were made in the court below. (Gordon v. Gordon, 15 Mo. 215; Long v. Story, ib. 4 ; Chamberlain v. Smith, 1 Mo. 718.)

LEONARD, Judge, delivered the opinion of the court.

This judgment must be affirmed. Assuming that there was a proper application to the court below for a review of the finding, upon the ground that it was not warranted by the evidence,

and that a case has been properly made to subject the decision of the inferior court upon that motion to review here, there is nothing in this part of the case to justify a reversal of the judgment. If we look into the evidence we can not say that the finding was against it, and we may therefore pass at once to the question whether the facts found warrant the judgment the court pronounced upon them.

The original transaction is not only expressly found to have been a mortgage, but is shown to have been such by the specific facts found, and the act of the administrator, in receiving from Hunter the balance of the alleged purchase money, and surrendering the possession of the slave, was neither a new transaction, then passing the title to Hunter, nor a sale to him of the equity of redemption. The administrator acted upon the representations of Hunter, who insisted that the title had already passed to him, and that there was no equity of redemption in the administrator—the original transaction being, in his view of the matter, a sale, with the privilege of repurchasing, and not a mortgage. This transaction was not put in the form of a transfer of the original title of the sale of the equity of redemption, and of course we ought not to allow it to operate in that way, when the effect would be to defeat the intention of the parties.

The sale made by the administrator, under the order of the county court, was valid, and transferred the equity of redemption, and the non-delivery is no ground of nullity in that transaction. The judgment is affirmed.